MORRISON COHEN LLP
909 Third Avenue
New York, New York  10022
(212) 735-8600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re the Application of U-TREND NEW YORK
INVESTMENTS L.P., through its General Partner Manhattan
Building Project N.Y. Management Ltd.,

For an Order to Take Discovery Pursuant

To 28 U.S.C. § 1782(a)

Docket No. M-14-MC-00143

# MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH SUBPOENA DUCES TECUM

MORRISON COHEN LLP
Attorneys for Petitioner U-Trend
New York Investments L.P.
909 Third Avenue
New York, New York  10022
(212) 735-8600

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| STATEMENT OF FACTS | 4 |
| ARGUMENT | 4 |
| I. MS. SINGER IS NOT ENTITLED TO A PROTECTIVE ORDER | 4 |
| II. THE SUBPOENA IS NOT DEFECTIVE AND SHOULD NOT BE QUASHED | 8 |
|     A. The Ex Parte Order Does Not Require Notice To The Parties To The Foreign Proceeding | 8 |
|     B. To The Extent Notice Of The Subpoena To The Parties To The Foreign Proceeding Is Required, It Can Be Easily Remedied | 9 |
|     C. Petitioner Served The Authorized Subpoena | 11 |
| III. JSBARKATS PLLC IS ETHICALLY PROHIBITED FROM REPRESENTING MS. SINGER | 12 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Cases                                                                              Page

*Catskill Dev. L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) .................................................................................................. 10

*Estate of Ungar v. Palestinian Auth.*, 400 F.Supp.2d 541 (S.D.N.Y. 2005) ..................................................................................................... 9

*Ghawanmeh v. Islamic Saudi Acad.*, 274 F.R.D. 329 (D.D.C. 2011) ........................................................................................................ 5

*Hajjar-Nejad v. George Wash. Univ.*, 2012 U.S. Dist. LEXIS 65146, 2012 WL 1655724 (D.D.C. 2012) ............................................................... 5-6

*In re Anglin*, 7:09CV5011, 2009 U.S. Dist. LEXIS 112866 (D. Neb. Dec. 4, 2009) ................................................................................... 8

*In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27 (S.D.N.Y. 1991) ..................................................................................................... 8

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216 (9th Cir. 1976) ............................................................................................................ 8

*Langford v. Chrysler Motors Co.*, 513 F.2d 1121 (2d Cir. 1975) .............................................................................................................. 9

*Okubo v. Reynolds (In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office)*, 16 F.3d 1016 (9th Cir. 1994) ................................................ 10

Statutes, Rules and Other Authorities

Fed. R. Civ. Proc. 45 d(3) ............................................................................................ 9

DR 5-105(b) of the New York Lawyer's Code of Professional Responsibility ................ 14

Petitioner U-Trend New York Investments L.P. ("Petitioner" or the "Partnership"), through its general partner Manhattan Building Project N.Y. Management Ltd., respectfully submits this memorandum of law in opposition to the motion of third-party Bruria Singer ("Ms. Singer") to quash Petitioner's subpoena *duces tecum* (the "Subpoena") and for a protective order (the "Motion to Quash") in the above-captioned action.

## STATEMENT OF FACTS

A comprehensive statement of the applicable facts is set forth in the accompanying affidavit of Terence K. McLaughlin, Esq. as is hereby incorporated by reference.

## ARGUMENT

### I.  MS. SINGER IS NOT ENTITLED TO A PROTECTIVE ORDER.

The crux of Ms. Singer's argument in support of her motion for a Protective Order is her flawed theory that the subpoena improperly seeks her to "steal" corporate records of her employer, US Suite LLC ("Suite LLC"). As shown below, that argument has traction here because, unlike in the cases relied on by Ms. Singer, the party propounding the Subpoena here is one of the owners of the corporation who she claims owns the documents. There is no issue of "theft" or "misappropriation" of the corporate information because Petitioner is *entitled* to the information independent of the Subpoena. The Subpoena is simply a vehicle (unfortunately necessitated by a management dispute) to compel her to do what she is otherwise obligated to do but has refused to do voluntarily.

As set forth in the McLaughlin Affidavit, Petitioner is an indirect part-owner of Suite LLC. Specifically, Suite LLC is a Delaware limited liability company with two members: US Suite Corp. (which holds a 70% membership interest and is designated as the "managing member") and 440 West 41st LLC (the "Minority Member") (which holds a 30% membership

interest). US Suite Corp. is a Delaware corporation whose shares are wholly owned by a Luxembourg Company, Hospitality Suite International, S.A. ("HSI"). Fifty percent of the shares of HSI are owned by Petitioner. Consequently, Petitioner holds an indirect 35% ownership interest in Suite LLC and is an equal owner of the entity that – according to Suite LLC's Operating Agreement – is designated as the "managing member" of Suite LLC.

Ms Singer claims that the documents called for in the Subpoena are corporate records of Suite LLC.[1] Assuming (arguendo) that is true, Petitioner is a part owner of that entity. As part owner, it has every right to request information from its employee and Ms. Singer has a fiduciary obligation to provide that information (or to surrender her employment).

Consequently, the situation presented here is fundamentally different from that presented in *Ghawanmeh v. Islamic Saudi Acad.*, 274 F.R.D. 329, 332-33 (D.D.C. 2011), which this court is not bound to follow as precedent in any event. There, a subpoena was propounded by a private litigant who claimed to have been the victim of discrimination by the Islamic Saudi Academy while employed by that entity. Though styled as a subpoena *duces tecum*, the court found that it was, in reality, an attempt by an *employee* to obtain discovery from her *employer* (a party defendant). In rejecting the subpoena, the court observed "It is as if an employee of the State Department was issued a subpoena to bring to court the records of the State Department." *Id.* at 332-333. But importantly, it was not the *employer* (the State Department) that was making the request. Had the State Department been making the request of one of its employees, there can be no credible doubt that it would be entitled to the information sought.

---

[1] Regardless of how the Court rules with respect to any documents that are deemed to be corporate records of Suite LLC, the Subpoena equally calls for all documents in Ms. Singer's *personal* custody, possession or control. This includes, without limitation, hard copy documents in her physical possess as well as documents on her personal computer(s) and personal email accounts. No basis has been offered by Ms. Singer to avoid production of such *personal* materials in response to the Subpoena.

The other non-Southern District case on which Ms. Singer relies is equally distinguishable for the same reason. *See Hajjar-Nejad v. George Wash. Univ.*, 2012 U.S. Dist. LEXIS 65146, 2012 WL 1655724 (D.D.C. 2012) (rejecting attempt by *employee* to obtain employer's records via subpoena to another employee).

Ms. Singer's argument about "theft" of corporate secrets is a red herring. There is no information that Ms. Singer could produce in response to the Subpoena that Petitioner is not already independently entitled to as a part owner of the entity itself. Indeed, even without a subpoena, Ms. Singer has a fiduciary duty to provide this information to Petitioner as one of the owners of the entity that employs her. As a purported employee, Ms. Singer has been paid a handsome six-figure salary, including $10,000 per month during 2014. In exchange for this substantial salary, she owes fiduciary duties to her employer and *all* of its owners, including Petitioner here.

The Court might inquire as to why it should be necessary for Petitioner, as part owner of Suite LLC, to resort to a subpoena to obtain information from its own employee. The answer is straightforward: Suite LLC is currently the subject of an internal management dispute that has left the entity in hopeless deadlock. Indeed, as described more fully below, the Minority Member has usurped control of Suite LLC, excluded the other owners (including Petitioner) from the management and deprived them of access to the books and records. Not coincidentally, the Minority Member is also represented by JSBarkats PLLC – the same firm that represents Ms. Singer here and that is seeking to thwart Petitioner's access to Suite LLC's books and records.

This is hardly a surprise. Ms. Singer was installed in her position as an employee of Suite LLC by Ben Zion Suky, a representative of the Minority Member. Her current counsel is the same firm that has entered an appearance on behalf of Mr. Suky *personally* in another

litigation (brought by him against an Israeli television network). Furthermore, in a sworn affidavit, dated June 24, 2014, submitted by Mr. Suky to a court in Israel, Mr. Suky described Ms. Singer as his "personal assistant."

As outlined in greater detail in Point III below, Mr. Suky (on behalf of the Minority Member) has engaged in egregious wrongdoing with respect to Suite LLC. Ms. Singer has (by her own admission when confronted by Petitioner's representatives) been the instrumentality through which Mr. Suky perpetrated his misdeeds. Though her liability for her role in Mr. Suky's misconduct is a matter for another court, there can be no doubt that this is the true reason why she has refused to comply with the Subpoena. In short, she is loyal to the Minority Member and her counsel – which represents the Minority Member and its representative Mr. Suky – is simply acting to protect the Minority Member's interests in a broader management dispute.

At the end of the day, although the motivations driving this motion to quash are reasonably clear, the issue for the Court is simple: can Ms. Singer completely avoid responding to the Subpoena simply because it requests documents and information of which she has access to by virtue of her position as bookkeeper for Suite LLC, particularly where the party making the request is one of the owners of Suite LLC. Petitioner respectfully submits that there is no ground for a protective order and she should be required to fully comply with the Subpoena.[2]

---

[2] In the alternative, Petitioner respectfully requests leave to amend the Ex Parte Order for permission (on notice to the parties in the Israeli Action) to serve Ms. Singer with a subpoena *ad testificandum*. Ms. Singer undoubtedly has personal knowledge and information regarding (among other things) Petitioner's loans which is critically relevant to the issues in the Israeli Action. Petitioner is aware of no basis on which Ms. Singer cold avoid being called to testify about her personal knowledge of such matters. 28 U.S.C. § 1782 expressly authorizes the taking of testimony in aid of a foreign proceeding.

## II. THE SUBPOENA IS NOT DEFECTIVE AND SHOULD NOT BE QUASHED.

### A. The Ex Parte Order Does Not Require Notice To The Parties To The Foreign Proceeding.

Ms. Singer argues that the Subpoena is defective because Petitioner failed to serve a copy of the Ex Parte Order and the Application on the parties to the foreign proceeding. As the court made clear in *In re Anglin*, 7:09CV5011, 2009 U.S. Dist. LEXIS 112866 (D. Neb. Dec. 4, 2009), a cite cited and relied on by Ms. Singer herself, the issue of whether to require notice to the parties in the foreign action is a matter for the court to determine at the time that it considers the ex parte application:

> Courts have held that a litigant in a foreign action may file an *ex parte* § 1782 application requesting authority to serve subpoenas on a United States citizen to secure evidence for a foreign case. However "such ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *See, e.g., In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 (S.D.N.Y. 1991) (quoting *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976)).

*Id.* at *1-2. The Court in *Anglin* went on to *deny the ex parte application* because it did not provide for notice to the parties in the foreign action. *Id.* at 2 ("The order, as requested, cannot be entered ex parte.")

Here, it was for Justice Preska (who considered the original Ex Parte Order) to determine whether to grant or deny *ex parte* relief on the terms in Petitioner's proposed order. Indeed, as the Court observed in *Anglin*, the granting of judicial relief in aid of a foreign proceeding is within the discretion of the district court. Id. at *2-3. Had Judge Preska wished, in her discretion, to condition the granting of *ex parte* relief on a requirement that Petitioner provide notice of the application and/or any resulting subpoena on the parties in the foreign proceeding, she could have included language to that effect in the Ex Parte Order. She did not do so.

There is nothing in the Ex Parte Order that requires service of that order, the 1782 application or any resulting subpoena on the parties to the foreign proceeding. To the contrary, the Ex Parte Order contains three discrete and express directives: (a) it grants the *ex parte* Application for discovery under 28 U.C.C. § 1782(a); (b) it authorizes Petitioner to serve each of the three subpoenas annexed to the Ex Parte Order; and (c) it instructs the *respondents* how to object if they are inclined to do so. Petitioner complied in all respects with the Ex Parte Order.

### B. To The Extent Notice Of The Subpoena To The Parties To The Foreign Proceeding Is Required, It Can Be Easily Remedied.

To the extent this Court determines that the parties to the foreign proceeding in Israel are nonetheless entitled to notice of the Subpoena, that can be easily cured by Petitioner immediately providing the required notice. For the following reasons, however, Ms. Singer is not entitled to categorically evade her obligations under the Subpoena merely because the parties to the Israeli action have not yet received formal notice of the Subpoena.

First, the only purpose to be served by providing notice of the Subpoena to the parties in the Israeli proceeding would be to protect those parties' right to obtain *copies* of whatever is produced by Ms. Singer. To date, of course, Ms. Singer has not produced anything and no foreign party could claim to be prejudiced. Under the express terms of Rule 45, a party does not have standing to substantively object to or quash a subpoena to a non-party; only the non-party recipient may do so. *See, e.g.*, Fed. R. Civ. Proc. 45 d(3) (permitting only a "person subjected to or affected by a subpoena" to move to quash or modify the subpoena). Case law is equally clear that "In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness." *Estate of Ungar v. Palestinian Auth.*, 400 F.Supp.2d 541, 554 (S.D.N.Y. 2005) (quoting *Langford v. Chrysler Motors Co.*, 513 F.2d 1121, 1126 (2d Cir. 1975). Consequently, if the Court deems that notice to the parties in the

foreign proceeding is required, Petitioner will promptly provide them notice, through their Israeli counsel. Petitioner also has no objection to providing the foreign parties with copies of whatever Ms. Singer produces, when she does so. In short, the interests of the foreign parties can and will be fully protected.[3]

It is true that a party may sometimes possess standing to object to a non-party subpoena where it can show that it has a "privacy or proprietary interest in the documents sought." *Catskill Dev. L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002). Here, none of the parties to the Israeli action – other than arguably Suite LLC – has any privacy or proprietary interest in the documents sought. As to Suite LLC, its interests are already well represented by the JSBarkats firm. Not only is that firm representing Ms. Singer in her capacity as an employee of that entity, it in fact purports to represent Suite LLC *directly* in a separate action currently pending in the New York State Supreme Court, Commercial Division. Although Petitioner disputes the propriety of JSBarkats representing Suite LLC in the New York Action,[4] it nevertheless appears that Suite LLC's interests with regard to the Subpoena are well represented by Ms. Singer's current counsel.

---

[3] The situation here is fundamentally different from that involved in *In re Letter Request from Supreme Court*, 138 F.R.D. 27, 1991 U.S. Dist. LEXIS 8968 (S.D.N.Y. 1991), cited by Ms. Singer. There, the party to the foreign action was under criminal indictment in the foreign proceeding and the discovery sought under 28 U.S.C. § 1782(a) was deposition testimony. The court there was concerned with a deprivation of the foreign party's right to confront and cross examine the deposed witnesses. Here, the foreign party's rights are limited to obtaining copies of any documents Ms. Singer may produce, which can be easily provided for. Indeed, in *Okubo v. Reynolds (In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office)*, 16 F,3d 1016 (9th Cir. 1994), the other case relied on by Ms. Singer, the remedy fashioned by the court was merely an order directing that the evidence collected pursuant to 28 U.S.C. § 1782 be turned over to the foreign parties. 16 F.3d at 1021 ("Accordingly, appellant's remedy is a district court order directing the commissions to provide copies of all witness statements- including affidavits, interviews and depositions – and all documentary and physical evidence collected and still in the commissioner's possession.") When and if Ms. Singer produces documents, Petitioner will provide copies to the parties in the foreign action.

[4] This topic is discussed in greater detail in Point III below.

### C. Petitioner Served The Authorized Subpoena.

Ms. Singer next argues that "the Subpoena served was not the Subpoena authorized." (Moving Memo. at 3.). Ms. Singer's argument, however, is premised on an incomplete copy of the Ex Parte Order.

The Ex Parte Order authorized Petitioner to issue three separate subpoenas, one of which was to be issued to Ms. Singer:

> ORDERED that Applicant is authorized, pursuant to 28 U.S.C. § 1782(a), to seek discovery from *each of the Respondents* pursuant to the Federal Rules of Civil Procedure by issuing and serving subpoenas duces tecum in the forms annexed hereto *on each Respondent, respectively* . . .

(Ex Parte Order, Singer Affidavit Exhibit A, at 2 (emphasis added).) The Ex Parte Order includes three exhibits: Exhibit 1 is a form of subpoena to the law firm Stroock Stroock & Lavan LLP; Exhibit 2 is a form of subpoena to an accounting firm Mayer Hoffman McCann CPAs; and Exhibit 3 is a form of subpoena to Ms. Singer.

A file-stamped true and *complete* copy of the Ex Parte Order, with *all* of the relevant pages, is annexed to the McLaughlin Affidavit as **Exhibit 1**. As can be seen from that Exhibit, the proposed subpoena to Ms. Singer (*i.e.*, Exhibit 3 to the file-stamped Ex Parte Order) comprised a total of *six* pages, with six separately enumerated document requests set forth on pages 5 and 6 of the subpoena. That is the version of the Subpoena that was authorized by the Court, and that is the version that was served on Ms. Singer.

Ms. Singer's argument that "the draft subpoena regarding Ms. Singer attached to the application and Ex Parte Order contained **three** document demands," (Moving Mem. at 3), appears to be based entirely on an *incomplete* copy of the Ex Parte Order. Specifically, the version of the Ex Parte Order included as Exhibit A to Ms. Singer's Affidavit is missing the sixth and final page of Exhibit 3, which reflects request numbers 4, 5 and 6 to Ms. Singer.

In short, the file stamped copy of the Proposed Order provided to Petitioner by the Court (*i.e.*, Exhibit 1 to the McLaughlin Affidavit) clearly reflects that the Ex Parte Order authorized Petitioner to serve a six-page subpoena on Ms. Singer, comprised of six separate requests. That is what Petitioner was authorized to do, and that is what Petitioner did. Ms. Singer should respond to the Subpoena in its entirety.

### III. JSBARKATS PLLC IS ETHICALLY PROHIBITED FROM REPRESENTING MS. SINGER.

For the reasons that follow, Petitioner respectfully submits that JSBarkats PLLC (the "JSBarkats Firm") is ethically prohibited from representing her in this action.

Apart from representing Ms. Singer in this action, the JSBarkats firm is also currently representing 440 West 41st LLC in a separate action currently pending before Justice Ramos of the New York State Supreme Court, Commercial Division (the "New York Action"). By way of background, 440 West 41st LLC is the 30 percent minority member of Suite LLC (the entity that Ms. Singer claims to work for). The JSBarkats Firm also purports to be representing Suite LLC in the New York Action. And the JSBarkats firm represents 440 West 41st's representative, Ben Zion Suky, *individually* in yet another action (in which Mr. Suky is suing an Israeli television network).

In the New York Action, Petitioner alleges in great detail that the Minority Member (through its agent, Ben Zion Suky) usurped management control over Suite LLC several years ago and proceeded to systematically loot that entity to the serious detriment of the other indirect owners, including Petitioner. Petitioner's allegations in the New York Action with regard to the Minority Member's and Mr. Suky's wrongdoing are set forth extensively in a forty-eight page Affidavit of Tomer Shohat (Petitioner's authorized representative) with thirty-seven

supporting Exhibits.[5] A true and correct copy of Mr. Shohat's Affidavit (without Exhibits) is annexed as Exhibit 7 to the McLaughlin Affidavit.

Although Mr. Shohat's Affidavit speaks for itself, by way of example only, that Affidavit demonstrates (with supporting evidence) at least the following categories of wrongdoing by the Minority Member:

a. Siphoning off millions of dollars in unauthorized management fees (in excess of $500,000 per year in recent years) to Mr. Suky and his brother without any written authorization despite the fact that the Property was unsafe and in a state of disrepair (including, without limitation, the absence of a functioning fire sprinkler safety system on certain of its guest floors) and despite the Property's failure to repay all if its debts;

b. Causing the Property to directly reimburse personal expenses of Mr. Suky and members of his family (such as, for example, personal shopping sprees at Bloomingdales by Mr. Suky's wife, utilities and cable television services to Mr. Suky's personal residence; real estate taxes and other related fees for other properties owned by Mr. Suky, a personal parking garage for Mr. Suky; personal air travel and limousine service expenses, and numerous other examples), all backed up with copies of invoices and returned checks reflecting the improper reimbursements;

c. Causing the Property to pay management fees to Mr. Suky in a manner that evades income taxes (*i.e.*, by having the Property directly reimburse personal expenses of Mr. Suky and his family and booking such expense reimbursements as management fees "paid" to Mr. Suky);

d. Causing Suite LLC to assume liability for personal debts owed by Mr. Suky to third parties;

e. Bribing the head of the "Israeli FBI" by offering multiple free rooms at the Property as admitted in a sworn affidavit submitted to Israeli law enforcement in support of a plea bargain deal for a famous Israeli Rabbi (Rabbi Yoshiyahu Pinto) who is currently under indictment in Israel);

f. Offering free rooms to numerous guests at the Property on multiple occasions and instructing other guests to pay Mr. Suky or his brother directly (in cash) for rooms reserved at the Property; and

g. Causing the Partnership's representative to be falsely arrested and imprisoned overnight on bogus charges after the representative confronted

---

[5] Further evidence and additional supporting Exhibits were offered as direct testimony by Mr. Shohat during the course of the New York Action.

Mr. Suky, with evidence, regarding his wrongdoing (the bogus charges were later summarily dropped by the District Attorney's office as utterly baseless).

These are only a few examples of the serious wrongdoing set forth in Mr. Shohat's Affidavit. Suite LLC and its other owners were grievously damaged by the Minority Member's and Mr. Suky's actions and inactions. That being so, the Barkats Firm cannot simultaneously represent Mr. Suky *and* the Minority Member *and* Suite LLC *and* Ms. Singer in her capacity as an employee of Suite LLC. The interests of US Suite are diametrically opposed to those of the Minority Member and Mr. Suky. Moreover, as Mr. Shohat's affidavit alleges, much of the Minority Member's wrongdoing was accomplished with the assistance of Ms. Singer. At a minimum, Ms. Singer's interests (as a participant in the wrongdoing) are adverse to those of Suite LLC (the JSBarkat Firm's other purported client). Additionally, to the extent Ms. Singer will claim that she was instructed to do what she did by the Minority Member and/or by Mr. Suky, her interests clearly are adverse to those of the Minority Member and Mr. Suky.

DR 5-105(b) of the New York Lawyer's Code of Professional Responsibility states, in pertinent part:

> A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, *or if it would be likely to involve the lawyer in representing differing interests*, except to the extent permitted under DR 5-105(c).

DR 5-105(c), in turn, provides:

> In the situations covered by DR 5-105 (A) and (B), a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved.

Even if Mr. Suky, Ms. Singer, the Minority Member and Suite LLC have been fully apprised of and waived the conflicts of interest inherent in the JSBarkat Firm's

- 11 -

simultaneous representation of all of these clients,[6] the representation is still impermissible because no disinterested lawyer would believe that one lawyer could competently represent Suite LLC, Ms. Singer, Mr. Suky and the Minority Member simultaneously under circumstances where it is alleged (and will be proven) that the Minority Member systematically looted Suite LLC and otherwise engaged in serious and systematic wrongdoing, with the assistance of Mr. Suky and Ms. Singer, to the grave detriment of Suite LLC.

## CONCLUSION

For all of the foregoing reasons, Petitioner respectfully submits that there is no basis on which to quash the Subpoena or to grant Ms. Singer's request for a Protective Order. Petitioner requests that the Court deny the Motion in its entirety, direct Ms. Singer to promptly and fully comply with the Subpoena by producing all documents called for in the Subpoena to Petitioner's counsel and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 6, 2014

MORRISON COHEN LLP

By: _____
Terence K. McLaughlin

909 Third Avenue
New York, New York 10022
(212) 735-8600

Counsel for U-Trend New York Investments L.P.

---

[6] Petitioner, as a part-owner of Suite LLC is unaware of any request for a waiver from Suite LLC by the JSBarkats Firm. In fact, Petitioner is unaware of any valid authorization given by Suite LLC's managing member, US Suite Corp, to retain the JSBarkats Firm to represent Suite LLC in the first place. The retention of the JSBarkats Firm purportedly on behalf of Suite LLC is symptomatic of the improper way in which Mr. Suky and the Minority Member have usurped control of Suite LLC in total derogation of its governing documents.